## HOLLIS v. SOUTHERN SURETY CO. OF NEW YORK.

### No. 1690—6198.

Commission of Appeals of Texas, Section A.
Oct. 4, 1933.

Callaway & Wade, of Fort Worth, for plaintiff in error.

John T. Suggs, of Dallas, for defendant in error.

HARVEY, Presiding Judge.

On November 29, 1929, Chester Hollis, county clerk of Tarrant county, had a deposit account with the Texas National Bank of Fort Worth, in which account was carried certain trust funds held by Hollis in his official capacity as county clerk. At that time, and until the Act of the 41st Legislature (1930), Fourth Called Session, chapter 14, became effective in February, 1931 (Vernon's Ann. Civ. St. art. 2558a), the statutes did not provide for the selection of a depository bank in which funds of that character were required to be deposited by the county clerk. In other words, Hollis, as county clerk, was the legal custodian of said funds, and was responsible for their safe-keeping, and was free to select, on his own responsibility, the bank to carry the deposit of such funds. On the date mentioned, he required the Texas National Bank to give a bond, with the Southern Surety Company of New York as surety, which bond contained the following relevant provisions:

"The Texas National Bank of Fort Worth, Texas, as principal, and the Southern Surety Company of New York, as surety, are held and finally bound unto Chester Hollis, County Clerk of Tarrant County, Texas, in the full and just sum of $20,000, to the payment of which, well and truly to be made, the principal and surety hereby bind themselves, their successors and assigns, jointly and severally, firmly by these presents.

"Whereas, the principal has been designated as a depository of County Clerk General Fund and County Clerk Trust Fund.

"Now therefore the condition of the above obligations is such that if the above bounden principal shall in due course pay, on legal demand during the term of this bond, all moneys deposited pursuant to such designations, including any balance on deposit at the beginning of said term, together with interest at the rate agreed upon, then this obligation shall be void, otherwise of full force and effect. * * *

"Section A. * * *

"Fifth: In case of payment of a loss on account of a default hereunder the surety shall be subrogated to such proportion of all rights of the obligee growing out of such loss, including dividends paid and to be paid out of the estate of the principal, as the amount so paid by the surety bears to the total deposit of the obligee at the time of such default, and simultaneously with such payment the obligee shall execute all papers required by

the surety and render all assistance, not pecuniary, to secure to the surety, the rights herein provided for. * * *

"Section B.

"First: At the earliest practical moment, and in any event within ten days, after a default hereunder, the obligee shall give the security notice thereof by letter, * * * and shall within sixty days after such default, furnish to the surety affirmative proof of the loss with full particulars. * * * No suit to recover on account of a default hereunder shall be brought before the expiration of ninety days from the furnishing of such proof or after the expiration of twelve months from such default."

During the term of the above bond, to wit, on February 1, 1930, the said bank closed its doors and its affairs were taken over by the federal authorities. At that time, the amount of said deposit account in the bank was $25,743.13. On February 3, 1930, Hollis duly notified the said surety company of the closing of the bank. On April 14, 1930, Hollis and said surety company executed the following written agreement: "Whereas, Chester Hollis, is named as obligee in a certain Depository Bond in the penalty of Twenty Thousand, ($20,000.00) Dollars, executed by the Southern Surety Company of New York as Surety, in behalf of the Texas National Bank of Fort Worth, Texas, which bank has suspended payment, and at the time of such suspension of payment there stood to the credit of said Chester Hollis, in said bank, the sum of $25,743.23, being in excess of the penalty of the bond; and whereas, the Southern Surety Company is ready and willing to pay the said Chester Hollis the penalty of said bond, by virtue of said suretyship thereon; but, the parties are unable to agree, at this time, as to participation of said Chester Hollis and by said Southern Surety Company in liquidation dividends to be hereafter paid in the case of the liquidation of said bank. Now therefore, it is agreed between the parties, as follows: The Receiver of the Texas National Bank shall be requested by Chester Hollis and by the Southern Surety Company to issue his certificate evidencing the total amount of said deposit, being the General Fund of said Chester Hollis as County Clerk and County Clerk Trust Fund of said County of Tarrant, Texas, and covered by said bond, which certificate shall be payable to Fort Worth National Bank, Fort Worth, Texas, who is herein named as Trustee. The parties agree to execute any form or other document required by said Receiver, incident to the issuance by him of said certificate to said Trustee. Said Trustee shall collect all liquidation dividends hereafter payable, and shall hold said funds for the joint account of the Southern Surety Company and Chester Hollis. Should said Chester Hollis and said Southern Surety Company hereafter file with said Trustee a written agreement providing for the apportionment of said funds payable to each of said parties, such agreement shall be authority for the Trustee to make payment in accordance with the terms thereof. Should such an agreement not be made, then either party hereto may file suit against said Trustee, in order that the rights of the parties to the funds in his hands, or that may come into his hands, may be determined by Court jurisdiction, and the Trustee shall pay and disburse said funds as may be determined by said Court, or he may, at his election, tender the amount of said funds in the court for disposition by the judgment thereof."

The Fort Worth National Bank formally accepted the trust provided in the above instrument.

At the time the instrument just set out was executed, the surety company, by a check in favor of Hollis, paid him $20,000, "the penalty of said bond." It was recited in the check that it was "in payment of claim under bond 502488, Texas National Bank, Ft. Worth, Texas, depository for Chester Hollis, County Clerk, Tarrant County, Texas, and in consideration of the assignment of this claim to the extent of this payment." On the draft was the following: "The endorsement of this draft is made in connection with and subject to the terms and conditions of the contract bearing date of April 14, 1930, between Southern Surety Company of New York and Chester Hollis, County Clerk of Tarrant County, Texas." On August 16, 1930, the receiver of the Texas National Bank of Fort Worth "on account of the total deposit to the credit of Chester Hollis, as County Clerk," paid to the Fort Worth National Bank, trustee, a dividend of 25 per cent., amounting to $6,435.80, and afterwards paid a dividend of 10 per cent., amounting to $2,574.32, making a total of $9,010.12 in dividends paid to said trustee bank. This suit was brought by said surety company against Hollis and the Fort Worth National Bank to recover a proportionate part of said sum of $9,010.12 which the surety company claims under and by virtue of the provisions of the bond, and "a like interest in all such liquidation dividends as may be hereafter paid." The trial was to the court without a jury, and resulted in a judgment confirming in Hollis the title and possession of the $20,000 paid to him by the surety company and awarding to Hollis a recovery of $5,743.13 of said dividends paid to said trustee, and awarding to the surety company a recovery of the balance of the dividends. The surety company alone appealed, and the controversy involved in the appeal is in regard to the meaning and effect of the provisions for subrogation, as contained in the bond in question, and hereinabove set out. It will be observed that the effect of the trial court's judgment was

to give to the surety company, in conformity to equity principles of subrogation, all future dividends, together with such balance of the $9,010.12 in the hands of the trustee bank as remained after Hollis was made whole. The Court of Civil Appeals reformed the judgment of the trial court so as to award the surety company a larger proportion of the dividends in question, and as so reformed the judgment of the trial court was affirmed. 45 S.W.(2d) 716. The Court of Civil Appeals held, in effect, that under the provisions of said bond, the surety company had the contract right to share in said dividends in the proportion that the sum of $20,-000 paid by the company to Hollis bears to the total deposit of $25,743.13 which remained in the Texas National Bank of Fort Worth when that bank failed. This holding is based on the provisions of the bond as interpreted by said court. We are unable to discover any reasonable interpretation of those provisions other than that made by the Court of Civil Appeals. We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.